Mr. Conrad C. Bishop, Jr. County Attorney Lafayette County Post Office Box 167 Perry, Florida 32347
Dear Mr. Bishop:
This is in response to your request for an opinion on substantially the following question:
 DOES THE BOARD OF COUNTY COMMISSIONERS OF LAFAYETTE COUNTY HAVE THE AUTHORITY TO SELL REAL PROPERTY OWNED BY THE COUNTY WHICH WAS ORIGINALLY PURCHASED PARTIALLY WITH FUNDS FROM A FEDERAL GRANT PROGRAM?
You state in your letter that the board of county commissioners is interested by having the State Department of Corrections locate a correctional institution in Lafayette County. As an inducement to locate the facility in the county, the board is willing to purchase a suitable tract of land for construction of the facility. In order to finance this purchase, it is necessary, according to your letter, to sell some other real property owned by the county. The land that the board wishes to sell is part of a tract of land that the county acquired partially through funds from a federal grant pursuant to the so-called `Green Span Program.' This tract consisting of 533 acres was acquired on or about October 31, 1966, with a total purchase price of $90,000.00. The federal grant was $29,481.77, with an additional cost-share assistance totaling $5,803.60 granted for establishing conservation and recreation uses on designated acreage. It is the tract of land acquired with the use of federal funds that you question the authority of the county to sell in order to acquire other property.
The `Green Span Program' was part of the Cropland Adjustment Program for 1966 through 1969, 7 C.F.R. s 751.142 (1966). The Cropland Adjustment Program administered by the United States Department of Agriculture was an aspect of the agricultural stabilization and conservation service. The stated purpose of the program, was to authorize agreements between the federal government and state public entities, including counties, to grant land acquisition funds and cost-share assistance `for use in acquiring cropland and carrying out practices thereon for the preservation of open spaces, natural beauty, the development of wildlife or recreational facilities, or the prevention of air or water pollution . . . .' Subsection (a) of 7 C.F.R. s 751.142 (1967). In a letter dated February 7, 1983, the State Executive Director of the Agricultural Stabilization and Conservation Service, United States Department of Agriculture, stated in response to the question of whether `Greenspan' regulations prevented the board of county commissioners from selling the land covered by an expired contract: `Under Greenspan, contracts were entered for a ten year period and had provisions which required the land to remain in the authorized use for the entire period. No requirements were included to restrict use after the end of the contract period.' Therefore, according to the State Executive Director the `[l]and may be sold after the end of the contract period without penalty.' The federal statute pertinent to this inquiry itself only requires `[t]hat if any failure to comply with the provisions of this section occurs within 10 years after the approval of the agreement, all payments paid or payable shall be forfeited or refunded with interest . . . .' 7 C.F.R. s 751.142(d)(8) (1967). This opinion is limited to an interpretation and application of Florida Statutes relating to the sale of county property and is premised upon the conclusion of the State Executive Director of the Agricultural Stabilization and Conservation Service, U.S. Department of Agriculture, that there is no federal law or regulation prohibiting the sale of the subject property.
Your question is controlled by s 125.35, F.S. Subsection (1) of this statute provides:
 The board of county commissioners is expressly authorized to sell and convey any property, real or personal . . . belonging to the county, whenever the board determines that it is to the best interest of the county to do so, to the highest and best bidder for the particular use the board deems to be the highest and best . . . . No sale of any real property shall be made unless notice thereof is published once a week for at least 2 weeks in some newpspaper of general circulation published in the county, calling for bids for the purchase of the real estate so advertised to be sold. The bid of the highest bidder, in the case of a sale, complying with the terms and conditions set forth in such notice shall be accepted, unless the board of county commissioners rejects all bids because they are too low. The board of county commissioners may require a deposit to be made or a surety bond to be given, in such form or in such amount as the board shall determine, with each bid submitted. (e.s.)
Thus, the board of county commissioners may sell the property in question if the board determines that it is in the best interest of the county to do so. Prior to the sale, notice of the sale calling for bids must be published once a week for at least two weeks in a newspaper of general circulation published in the county. Finally, the highest bid complying with the terms and conditions of the notice must be accepted unless all bids are rejected because they are too low.
It is therefore my conclusion that the board of county commissioners is authorized to sell real property acquired with grant money from the federal `Green Span Program' if the board determines that it is in the best interest of the county to do so and complies with the other requirements of $125.35, F.S.
Sincerely,
Jim Smith, Attorney General
Prepared by: Craig Willis, Assistant Attorney General